MONROE, C. J.
[1] 1. Defendant, having been charged with larceny and called to stand trial, challenged the array, alleging ' that the general venire from which were to be dr^wn the jurors by whom he was to be tried was illegally constituted, in this, that one of the witnesses required by law to be present at the selection of the citizens to constitute that body was incompetent by reason of his inability to read and write the English language, and that, the court having ordered the selection to be made anew, the jury commission, instead of complying with that order, merely selected other citizens to replace those previously selected who had rendered service or become disqualified by death, removal, or other cause, the names of the persons so' selected being then added to those left in the general venire box, and constituting the aggregate number (300) required by law, which was therefore composed, for the greater part, of citizens who had been illegally selected, and that it was 'from said aggregate as thus constituted that the jurors were selected by whom defendant was to be tried.
As the challenge is based niore particularly upon the ruling of this court in State v. Avis, 145 La. 632, 82 South. 729, it becomes necessary to consider that ruling in its relation to the law which is thereby interpreted.
The law is to be found in Act 58 of 1904, amending and re-enacting section 4 of Act 135 of 189S, and, so far as it need be here quoted, reads as follows:
“ * * * The members of said [jury] commission, or a majority of them, .shall meet at the office of the clerk of the district court and in the presence of two or more competent and disinterested witnesses of lawful age, competent to read and write the English language and residents of the parish, who shall be summoned by the clerk for that purpose, select from the persons qualified under this act to serve as jurors for their respective parishes, the names of three hundred (300) competent, good and true men,' a .list of whom shall be made out by the clerk under the supervision of the commission, and said witnesses and said list shall be kept'Complete and supplemented, from time to time as hereinafter enacted. Each of the names on said list shall be written by the said clerk on a separate slip of paper, together with the number of the ward or place of residence of such person, and the slips of paper or ballots containing the names selected except those containing the names of the persons chosen to serve as grand jurors as hereinafter provided, shall be placed in a box which shall bo labeled ‘General Venire Box,’ [there should, we think, be a period after the word “Box,” but there is a comma instead,] immediately after completing said general venire list, the commission, shall select therefrom the names of twenty (20) citizens possessing the qualifications prescribed by section one (1) of this act, to be taken from different portions of the parish, as far as practicable, who shall be subject to duty as grand jurors during the term of six months after the grand jury shall have been impaneled and until a succeeding grand jury shall have been impaneled. The names of the persons so selected shall be written on slips of paper, by the clerk, in the présence of the commissioners and they «hall place the slips in an envelope, seal the same and indorse thereon the words, ‘List of Grand Jurors.’ Thereupon the slips contained in the general venire box shall be well mixed, and one of the members of the jury commission, in the presence of the others and of the witnesses as above provided, shall draw therefrom one at a time, the names of thirty (30) persons to serve as petit jurors, for the first or for the second week, as the jury commission may decide or the district judge direct, of [for] the next ensuing session of the court, and if, in the judgment of the commission, a jury for another week may be required, or if the distinct judge shall so direct, they shall draw, in the same manner, thirty (30) additional *169 names for service as jurors during the second or third week, as the case may be, of the session.”
Section 6 of the amended act (No. 135 of 1S98, p. 220) provides:
“That not less than twice in each year, or ■once in every six (6; months, computing the time from the date of the first drawing by the jury commission, pursuant to the provisions of this act, the jury commission shall meet at the clerk’s office, and after being furnished- by the clerk of the court with a list of the grand jurors and of those who have served as regular-jurors since the previous drawing of the general venire, shall in the presence of said witnesses, examine the original venire list and strike therefrom the names of such as have served, as well as the names of others on the list who are known to have died, removed from the parish, become exempt or disqualified to serve as jurors since their names were entered thereon; and the names of those who have died, removed, or disqualified shall also be taken from the general venire box. The commission shall then supplement the original list and the ballots in the box with the names -of the same number of good and competent men from the qualified jurors of the parish, as have been taken from the box, and erased from the list, so as to keep the number of names in the general venire box and on the jury list as the original standard of three hundred (300) contained therein.”
Section 15 of the act (No. 135 of 1898) declares:
“That it shall not be a sufficient cause to ■challenge the general venire selected for any session of the court or portion thereof, or for service at any time, * * * or set aside the venire, because some of the jurors on' the list are not qualified to act, nor because of any other defect or irregularity in the manner of selecting the jury as above provided; and [to] no such defect or irregularity in the ■selection thereof, or the summoning of the jury, shall be sufficient cause, if it shall not appear that some fraud has been practiced or some great wrong committed in the selection and summoning of the jury that would work irreparable injury; provided, it shall be good ground to challenge, for cause, any juror who is not qualified to act under the provisions of this act.”
In State v. Avis, 145 La. 632, 82 South. 729, it was found that upon the occasion of the supplementing of the names in the general venire box, probably in 1918, prior to the trial and conviction of the defendant in that case, one .of the (two) witnesses required to be present was unable to read and write the English language, and it was held by the court that the selection of jurors was “not merely irregular and defective, but void for lack of authority in those by whom it was made” — citing State v. Feazell, 114 La. 533, 38 South. 444. The conviction was therefore annulled, and the case remanded (to the same court from which the present -appeal is brought up), and the court made an order in the language of the statute directing the clerk “to notify the jury and commissioners * * * to appear at his office on Monday, September 1, 1919, * * * for the purpose of selecting from the persons qualified * * * to serve as jurors, the names of 300 competent, good and true men, a list of whom shall be made out by the clerk, under the supervision of the commission and the witnesses, and the said list shall be thereafter kept complete and supplemented,” etc., which order the clerk, commission, and competent witnesses appear (according to the procés verbal which we find in record) to have obeyed to the letter.
It is, however, alleged (in the challenge of the array).:
“That said procés verbal fraudulently states that a new list was so made, but, in truth and in fact, it was supplemented instead, as will fully appear from evidence that will be taken in support of this challenge.”'
Turning to the evidence thus referred to, we find that it was* elicited from Louis Bacon, a jury commissioner, and O. E. Guillory, the' clerk of the court; I-Ienry Glaze, another commissioner, having also been examined, but upon another subject. The testimony of Messrs. Bacon and Guillory reads as follows:
Mr. Louis Bacon: .
*171 “Q. (by defendant’s counsel). You are a jury commissioner? A. Yes, sir. Q. Did the jury commissioners take all the old names in the venire box except those who had died, removed from the parish, or otherwise been disqualified, in making out this venire box? A. We took what was left in the venire box that were qualified, .then we substituted the others. Q. Then the old venire box was the basis of the new venire box and was supplemented in order to supplement those who had died, removed from the parish, or otherwise become disqualified? A. Yes; and those who had not been drawn. Q. Then you supplemented the old box in order to bring up the 300 names? A. Yes.”
Cross-examination;
“Q. Were all the names taken out of the box? A. They were taken out of the box to find out those who had become disqualified. Q. Do you know of any reason why you should not have put those names that were qualified back in the box? (Objected to and objection sustained.) Q. Did you all draw up a procSs verbal of what you did on the occasion of your meeting on the 2d and 3d of September past? (Objection and objection overruled.) A. Yes, sir; to the best of my understanding. Q. You signed the proc&s verbal? A. Yes, sir. Q. You signed it as jury commissioner? A. Yes, sir.”
E e-examination :
“Q. Who wrote the proc&s verbal? A. Mr. Guillory, the clerk of the court. Q. The sum and substance of what you did was to take the 300 names out of the venire box and take out the ones who were removed from the parish, or who had died or otherwise become disqualified, or who had previously served, and added thereto names sufficient to bring up the 300 names? A. Yes. Q. You used the same names that were in the old venire box? A. Yes. Q. You pht the same names back? A Yes; except those who were disqualified.”
O. E. Guillory;
‘‘You are the Clerk of the court? ■ A. Yes. Q. In making out this venire, which is challenged, did you take the names out of the old venire box and use all of those names except of persons who had removed from the parish, who had died, or otherwise become disqualified? A. Yes; qualifiedly speaking, or we considered that we were making a new venire of 300 names, but I think we considered that we could use names of which we saw no reason why they had become disqualified, or why they were not then at that time qualified. We considered them qualified, and I did not take the trouble to write them down on a new slip of paper, but wrote them down on the jury list, using the- same slips on which the names were already written. Q. After diminating [eliminating] from the old venire all persons who had died, removed from the parish, or otherwise become disqualified for service, you added enough new names in order to make up the required 300 names? A. Yes. Q. This old venire' box which you used was the same old venire box declared illegal by the Supreme Court in the case of the State of Louisiana v. Adams Avis et als., -appealed from this court? A. It was the same venire on which Adams Avis obtained a new trial. Q. And the same venire declared illegal by the Supreme Court in the case for the reason that one of the witnesses to the drawing of the jury -could not read and write the English language? A. Yes. By the Court: Q. Your procés verbal states the fact of what you did? (Objection overruled.) A. Yes; so far as it is self-explanatory. Q. When you wrote that procés verbal you considered that you were writing the. 3Ü0 names which made up the venire? A. Yes. Q. In truth and in fact you placed the same names of the .old venire box, the same slips of paper with the names thereon, except those who had removed from the parish, become disqualified, and previously served and listed additional names to bring up the quantum of 300 names? A. That is correct as to the cards, but all of the names were written down anew on the jury list. Q. On the jury list of your procés verbal? A. Yes. Q. You used some of the old names from the old venire box? A. Yes; some of the same cards. Q. You put the same identical names in the box? A. Yes.”
Cross-examination:
“Q. Did you eliminate from the old venire of the 300 names all the names of those who had become disqualified? A. Yes.”
It will be seen from the foregoing that the only objection to the general venire in the case of State v. Avis, supra, was that it was supplemented, in the presence of two witnesses, one of whom was unable to read and write the English language, from which it followed that the jurors who were added *173 to replace those who had served or become disqualified by death or otherwise were illegally selected, and, their names having been mixed with those that were left in the box, the entire mass became affected and remained so up to the suxiplementing last preceding the trial and conviction of the defendant now before the court, when all the names were taken out of the box with the view, under the order of the court, of making a fresh start, in which situation it was entirely competent for the commission, in the presence of competent witnesses to select for the refilling of the box the names of any citizens of the parish, possessing the qualifications of jurors, save those exempted by law, including grand jurors who may have served during the preceding six months and petit jurors who may have served during the year preceding. Act 135 of 1898, § 2, “Fourth,” p. 217. Of the 300 names taken out of the box in this instance it appears that 97 were eliminated by reason of the fact .that their bearers had actually served within the year, had died, removed from the parish, or had otherwise become disqualified, leaving 203 names of jurors who were qualified and were selected, to which number there were added 97 to reXilace the eliminations and make up the required complement of 300. If it is true as the clerk says in his testimony, that, as the 203 names had already been written by him on the slips of paper, he did not write them over again, but used the slips (or “cards”) already written, and that he did write a new list, the omission to write the names on new slips or cards was an omission that is well within the condoning operation of section 15 of the statute hereinbefore quoted, since it contains no suggestion of fraud, wrong, or injury, whether irreparable or otherwise; and the fact that the 203 jurors were incompetent to act as such under their selection by incompetent authority had no bearing upon the question of their competency after having been selected by a majority of the commissioners with the clerk in the presence of two witnesses who were able to read and write the English language.
The challenge was therefore properly overruled.
[2] II. Defendant having taken the stand as a witness in his own behalf was asked on cross-examination. “Were you convicted for petty larceny prior to this accusation?” to which it was objected that it was an at7 tempt to prove bad character of the accused, without fii'jSt the defendant attempting to prove good character, and he was not prosecuted for another crime than the one alleged.”
The question was competent as a method of impeaching the character of defendant as a witness. State v. Murphy, 45 La. Ann. 958, 13 South. 229; State v. Casey, 110 La. 713, 34 South. 746; Marr’s Cr. Jur. of La. § 428, p. 723.
[3] III. A bill was reserved to the overruling of an objection to the following question propounded to defendant on cross-examination, to wit:
“Did you hear your brother-in-law, Angelas Guillory, testify in this case, on the former trial, that you had borrowed the wagon and team from him, saying that you wanted to go and move Eusebe Tete from near Chicot to Mamou Town.”
The objection was:
“That the evidence in a former trial is not admissible upon the second trial of an accused, and that the testimony of the absent witness would be the best evidence; that said question was only made for the purpose of prejudicing the accused.”
The statement per curiam reads:
“The defendant was under cross-examination, and it was perfectly legitimate for the state to propound those' questions to him for the purpose of impeaching his testimony as a witness in his own behalf, and make him admit *175 that he was not telling the truth” — citing Marr’s Or. Jur. of La. § 428, p. 723.
We find no reason to suppose that there is any error in that ruling, as we have no means ol’ knowing upon what testimony previously given by Mm 'defendant was being cross-examined.
[4] IV. Defendant moved for a new trial on the ground "that the judgment and conviction are contrary to law and the evidence.”
The motion and bill reserved to its overruling bring up no question for the consideration of this court. Marr’s Cr. Jur. of La. p. 845, and authorities there cited.
The trial judge states that he overruled the motion:
“Because this is the second time that the defendant has been tried and convicted, and the. verdict, in my opinion, is strictly in accordance with the law and the evidence.”
We find no error, and the conviction and sentence appealed from are therefore
Affirmed.